UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:09-CV-00127-JHM

CAMPBELLSVILLE MEDICAL ARTS
BUILDING PARTNERSHIP, LLP                                              PLAINTIFF

V.

STATE AUTO INSURANCE COMPANIES                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant State Auto Property & Casualty Insurance Company's motion for summary judgment [DN 59]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court **DENIES** the Defendant's motion for summary judgment.

**I. STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine

factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. BACKGROUND

Campbellsville Medical Arts Building Partnership, LLP ("Plaintiff") owns property called the Campbellsville Medical Arts Center ("CMAC") which was insured by State Auto Property & Casualty Insurance Company ("Defendant") in 2009. The roof on the building was a pre-engineered metal roof manufactured by Butler Products that has been on the building for approximately thirty years. On January 26, 2009 a significant ice storm struck Central Kentucky, including the region where CMAC is located. The following day, Plaintiff and staff noticed substantial leaking inside the building and damage to the roof. A claim was submitted to Defendant on the following day, January 27, 2009.

Defendant's expert witness, a roofing expert from Donan Engineering, Gilbert Arnold, performed two investigations of the roof, one on April 22, 2009 and one on July 16, 2009. Mr. Arnold's opinion is that the leaks were caused by improper installation and maintenance of the roof on CMAC, not due to the storm. Relying on Mr. Arnold's reports, Defendant denied Plaintiff's claim.

In response, Plaintiff filed the Complaint alleging that Defendant has violated Kentucky's Unfair Claims Settlement Practices Act, KRS 304.12-230, et. al, violated Kentucky's Consumer Protection Act, KRS 357.170, as well as claims of gross negligence, fraud oppression and/or a

reckless disregard for the rights of Plaintiff.

## III. DISCUSSION

In support of its motion for summary judgment, Defendant argues that (1) Plaintiff's expert witness is unqualified and therefore can not testify as to the causation of the leaks; (2) the subject matter of the case requires expert witness testimony and without it Plaintiff's claim must fail; (3) Plaintiff had a substantial amount of time to produce a qualified expert; and (4) Plaintiff is unable to establish causation between the leaks in the roof and the ice storm. The Court will address these arguments in turn.

### A. Plaintiff's Expert is Qualified

Defendant states that the question that the experts in this case must answer is what caused the leaks in the roof of the CMAC. Defendant argues that, after examining the education and experience of Plaintiff's expert, Donald Hines, he is not qualified as an expert to answer that question. Defendant reasons that because Mr. Hines was not trained or experienced in installing the particular brand of roof, Butler, that was on the CMAC, he lacks the specific knowledge to testify regarding the leaks. Additionally, Defendant states that Mr. Hines has no education or training in pre-engineered metal roofs or the effects of weather on roofs. In support of its argument, Defendant cites to <u>Kemper v. Gordon</u> in which the Kentucky Supreme Court concluded the trial court did not abuse its discretion in excluding the plaintiff's expert doctor who was not a board certified oncologist, and therefore not qualified to give an opinion on the likelihood of a cancer patient's survival. 272 S.W.3d 146, 154 (Ky. 2008). Defendant also references the Kentucky Court of Appeals' reliance on <u>Kemper</u> in affirming the trial court's exclusion of physicians who were testifying about radiology practices, procedure and compliance with the radiology standard of care

but were not radiologists themselves. Estate of Judith Burton v. Trover Clinic Found., Inc., 2011 Ky. App. LEXIS 94, *20-21 (Ky. Ct. App. June 10, 2011).

In response, Plaintiff argues Donald Hines qualifies as an expert. Plaintiff cites to Mr. Hines' deposition in which Mr. Hines states after attending several colleges and universities, he obtained his business degree from the University of Kentucky. Currently, he owns and manages Central Kentucky Roofing and Sheet Metal, which he has been operating for around five years. Prior to opening Central Kentucky Roofing, Mr. Hines and his family operated Central Roofing for 31 years. As a member and past president of Kentucky Roofing Contractors Association, Mr. Hines is required to obtain continuing education credits. Each year, Mr. Hines, his son and some of his employees will attend courses at schools in the roofing industry for certifications from different manufacturers, including Firestone, Carlisle, Centria, GAF and Celotex. While Mr. Hines states he does not have a certification from Butler, the manufacturer of the roof on the CMAC, he claims that the roofs from Butler are similar to other manufacturers for which he is certified. Additionally, Mr. Hines is familiar with the company that actually installed the roof on the CMAC, and went to the company in order to review the roof system and Butler's specifications. Mr. Hines' opinion is that the ice from the ice storm was "getting in the seams. These seams are so mechanically seamed with a caulk tape in them and ice got in there, froze and expanded and pulled the seam apart and pulled the caulk tape apart and water infiltrated into the building." (Hines Dep., p. 14 [DN 59-2].) Plaintiff further argues that any lack of specialized training should go to the weight of the evidence, not the competency.

"A trial court 'has broad discretion in the matter of the admission or exclusion of expert evidence, and [the court's] action is to be sustained unless manifestly erroneous.'" American &

Foreign Ins. Co. v. General Elec. Co., 45 F.3d 135, 137 (6th Cir. 1995) (quoting Salem v. United States Lines Co., 370 U.S. 31, 35 (1962).  The Federal Rules of Evidence Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the trial judge acts as a gatekeeper and has the "responsibility of screening [] evidence." Jahn v. Equine Servs, PSC, 233 F.3d 382, 388 (6th Cir. 2000) (citing Daubert, 509 U.S. at 589).  In determining whether an expert is qualified, "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." Morales v. Am. Honda Motor Co., Inc., 151 F.3d 500, 516 (6th Cir. 1998).  "Experts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as 'the expert's opinion has a reliable basis in the knowledge and experience of the discipline.'" Jahn, 233 F.3d at 388 (quoting Daubert, 509 U.S. at 592).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

     An expert is qualified by his knowledge, skill, experience, training or education.  Fed. R. Evid. 702.  Defendant cites to cases analyzing specialists in the medical field, comparing their level of expertise to the expertise of installing a specific brand of pre-engineered metal roofs.  Hines admits that he is not certified with Butler, but seems to be familiar with the manufacturer and its roof.  Defendant has not specified how Butler roofs differ from other roofs Hines is familiar with, or why Butler roofs are so unique that Hines would be unable to identify the cause of a leak.

Furthermore, Hines has close to forty years experience in the roofing industry and states that he received training with other manufacturers that make similar roofs. Hines' company conducted temporary repairs on the CMAC the day after the leak occurred, he assisted in maintaining the temporary repairs, and he has first hand knowledge of the roof and damage. While his testimony contradicts Defendant's expert, "comparing two pieces of evidence and determining which is more credible should be left for the finder of fact and should not be considered when ruling on Rule 702 admissibility." Jahn, 233 F.3d at 391. Given his experience, training and his first hand knowledge of the roof, the Court finds that his testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In finding that Hines is qualified, the Court will not address Defendants arguments regarding the necessity of an expert witness or whether Plaintiff had ample time to produce an expert witness.

**B. Causation**

Defendant states that an expert witness is necessary to testify as to the causal connection between the ice storm and roof leaking. The Plaintiff's expert, therefore, must produce evidence that would show that the ice storm was the probable cause of the leak, not just possible. Defendant argues that there were leaks in the CMAC roof prior to the ice storm and because of the leaks in CMAC's roof prior to the ice storm, Plaintiff is not able to eliminate the probability that the leaks were due to the improper installation and maintenance of the roof. Defendant concludes that summary judgment is appropriate because there is not enough evidence to turn causation from possible to probable.

In response, Plaintiff states that the record shows that the roof was properly installed 30 years before the ice storm and to suggest that the roof failed "as a result of improper installation almost

30 years before the Ice Storm is realistically improbable." (Pl.'s Response, 9 [DN 70].) Several employees and management of CMAC testified to the extensive damage caused by the breach of the roof after the ice storm, and Mr. Hines opined that the cause of the leaks was the ice storm. The testimony of Donna Davis, the building administrator, acknowledges a small leak or two in the roof associated with the installation of new air conditioning units. However, Dr. Ewing, the managing partner of Plaintiff, states that the day after the storm there were multiple leaks, water was pouring in and the most significant leak was in the back corner of the building. Based on the record, Plaintiff maintains that there is sufficient evidence to establish causation.

While causation is typically a term used in negligence cases, "legal causation may be established by a quantum of circumstantial evidence from which a jury may reasonably infer that the product was a legal cause of the harm." Bailey v. N. Am. Refractories Co., 95 S.W.3d 868, 872 (Ky. Ct. App. 2001) (quotation omitted). In other words, Plaintiff must "'indicate the probable, as distinguished from a possible cause.'" Id. at 872–873 (quoting Briner v. Gen. Motors Corp., 461 S.W.2d 99, 101 (Ky. Ct. App. 1970)). "Generally, the existence of legal cause is a question of fact for the jury. It only becomes a question of law for the Court where the facts are undisputed and are susceptible of but one inference." Johnson v. Triangle Insulation, 2003 WL 21769867, at *2 (Ky. Ct. App. 2003).

Reviewing the evidence in the light most favorable to the Plaintiff, the Court disagrees with Defendant's argument that the circumstantial evidence provided by Plaintiff will only lead the jury to speculate as to the cause of the leaks. While Defendant points out leaks prior to the ice storm as evidence that the leaks were due to the improper installation and maintenance of the roof, the statements of those other than Defendant's expert do not suggest the roof was improperly installed.

The leaks at issue in Plaintiff's claim occurred the night of and morning after the ice storm. The testimony of Michael Layton, the property manager, is that he had replaced ceiling tiles prior to the ice storm due to leaks, but the leaks he cleaned up after the ice storm were in a new location and the damage was worse than any other leak. (Layton Dep. 18:9-17; 19:7-11 [DN 59-3].) Donna Davis, the building administrator, testified that leaks occurred prior to the ice storm but they were due to the installation of an air conditioning unit. (Davis Dep. 28:12-16 [DN 59-4].) Dr. Ewing, the managing partner of Plaintiff, stated the air conditioning units on the roof caused condensation leaks, but testified that the roof had no significant problems until the ice storm. (Ewing Dep. 12:1-7 [DN 59-6].) And as stated previously, Plaintiff's expert, Hines, states that the ice storm was the cause of the roof damage. The Court must review the evidence in the light most favorable to the Plaintiff, and in doing so, the Court finds that facts regarding the cause of the leak are disputed and summary judgment is inappropriate. The determination of what caused the leaks in the roof of the CMAC is a question of fact for the jury.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment [DN 59] is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

December 21, 2012

cc: counsel of record